David B. Picker [DP-9658]
Suzanne Ilene Schiller [*pro hac vice* admission pending]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8888 / FAX- (215) 241-8844
e-mail: dpicker@lawsgr.com
*Lead Counsel for Defendant*

David N. Mair [DM-8883]
KAISER SAURBORN & MAIR, P.C.
111 Broadway
New York, New York 10006
Tel: 212-338-9100 / FAX- 212-338-9088
e-mail: mair@ksmlaw.com
*Local Counsel for Defendant*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| JEFFERSON CITY COMMONS, LLC, : | |
| : | Docket No. **08 Civ. 4866 (LAK)** |
| Plaintiff, : | |
| v. : | ECF Case |
| : | |
| MORAN FOODS, INC. d/b/a : | |
| SAVE-A-LOT, LTD., : | |
| : | |
| Defendant. : | |

---

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Defendant Moran Foods, Inc. d/b/a Save-A-Lot, Ltd. ("Save-A-Lot"), by its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion for an Order, pursuant to F.R.Civ.P. 12(b)(6), dismissing the Complaint of Plaintiff Jefferson City Commons LLC for failure to state a claim upon which relief can be granted.

470900-2

## Preliminary Statement

In this action, Plaintiff, a commercial landlord, has sued Defendant Save-A-Lot for allegedly improperly terminating the parties' lease for real property located in Texas (the "Premises"). Plaintiff makes its claims despite the fact that the lease expressly allowed Save-A-Lot the right to cancel if the landlord failed to complete certain construction and build-out work and grant Save-A-Lot "actual exclusive possession of the Leased Premises" within six months of the lease date. As Plaintiff did not complete the construction and build-out work nor deliver to Save-A-Lot actual exclusive possession of the Leased Premises within this time frame, Save-A-Lot properly exercised its right to terminate.

Crucial to this Motion, Plaintiff admits its non-performance, as its Complaint does not allege that it completed the construction and build-out work, does not allege that it tendered possession of the Leased Premises to Save-A-Lot, and does not allege that it otherwise performed its obligations under the lease. Thus, Plaintiff fails to allege an essential element of a contract claim.

Further, because the provision of the lease granting Save-A-Lot the right to terminate is clear and unambiguous, Save-A-Lot had an express and enforceable contractual right to terminate the lease, and Plaintiff has no claim. For both of these reasons, this action should be dismissed.

## Statement of Facts

The facts are not complicated.[1] Plaintiff Jefferson City Commons LLC is a Texas limited liability company, with offices in Mineola, New York. Plaintiff owns certain real

---

[1] The facts are derived from the Complaint ("Cplt.") and its Exhibits, which are attached as Exhibit 1. For purposes of this Motion, *factual* allegations in the Complaint are assumed to be true, but bald conclusions, conclusions of law, and assertions contradicted by the attached documents, are *not*. E.g.,

2

470900-2

property, a shopping center known as the Jefferson City Shopping Center, in Port Arthur, Texas. (Cplt. ¶3) Defendant Moran Foods, Inc., d/b/a Save-A-Lot Ltd. ("Save-A-Lot") is a Missouri corporation which operates numerous limited assortment grocery stores in a number of states under the trade name "Save-A-Lot". (Cplt. ¶¶ 4, 6)

By agreement dated July 10, 2007, Plaintiff agreed to lease to Save-A-Lot space to open a new store at the Jefferson City Shopping Center. A copy of the Lease is Exhibit A to the Complaint and a part thereof. (Cplt. ¶7) The Lease expressly conditions Save-A-Lot's obligation to take possession and pay rent upon Plaintiff's completion of certain construction work on the leased Premises within specified times, and otherwise imposes certain obligations on Plaintiff and grants to Save-A-Lot certain rights that are material to Plaintiff's claims and Save-A-Lot's Motion.

In particular, Lease §2.1 provides in relevant part as follows:

> "Original Term. The term *and Lessee's obligation to pay base rent and additional rent* herein shall begin on the earlier of (i) the day Lessee *opens for business* with the public in the Leased Premises, or (ii) the one hundred twentieth (120th) day following the *acceptance by Lessee of possession of the Leased Premises as provided for in Article 4* hereof (the 'Commencement Date'). ..." [Italics added]

Thus Save-A-Lot's obligation to pay rent does not commence or accrue until either (i) it has opened for business, or (ii) 120 days have passed after it *accepts possession* of the Premises pursuant to Article 4.

Article 4 refers to and imposes on Plaintiff the requirement to do, at its own expense, certain rather extensive construction and build-out work (the "LP Work") as set forth in Exhibit B to the Lease, in order to satisfy ADA and Building Code requirements and

---

First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994); Egan v. Marsh & McLennan Cos., No. 07 Civ. 7134 (SAS), 2008 U.S. Dist. LEXIS 6647 (S.D.N.Y., Jan. 29, 2008), at *10-12.

3

470900-2

otherwise make the Premises suitable for use, as a precondition to Save-A-Lot accepting possession and moving into the Premises. Section 4.1 of the Lease requires that:

> "Lessor *shall, at its expense*, complete the work on Exhibit B (hereinafter referred to as the "LP Work"), which work shall be done in a lien-free, good and workmanlike manner, in compliance with all applicable codes and governmental requirements and in accordance with the specifications attached hereto as Exhibit B." [Italics added; underlining in original]

Section 4.3 of the Lease requires Save-A-Lot to accept possession of the leased Premises only upon completion of the LP Work. It gives Save-A-Lot the affirmative right to cancel the Lease if the LP Work is not completed and actual and exclusive possession of the Premises not tendered to it within certain specified times. Lastly, it makes time of the essence. Section 4.3 provides, in relevant part, as follows:

> "Timing. Lessor further agrees to complete the LP Work, and deliver actual exclusive possession of the Leased Premises to Lessee on or before the ninetieth (90th) day from the date of this Lease. Lessee agrees to accept possession of the Leased Premises upon completion of the LP Work. In no event shall the LP Work be deemed completed unless Lessor has furnished Lessee with a certificate of occupancy or certificate of completion, ... and other permits necessary for Lessee's use ... except Lessee's business licenses. ... If Lessor fails to complete the LP work and tender actual exclusive possession of the Leased Premises to Lessee by said date and such failure continues for sixty (60) days after written notice of the failure by Lessee to Lessor, Lessee may, at its option, immediately cancel this Lease by notice in writing to Lessor, except for reasons which are beyond the reasonable control of Lessor as described below. ... *Notwithstanding any delays, whether within or beyond the control of Lessor, if the LP Work has not been completed, the existing Farmer's Furniture lease terminated and actual exclusive possession of the Leased Premises tendered to Lessee* **on or before the date six (6) months from the date hereof, Lessee may cancel this Lease** *by notice in writing to Lessor* given at any time thereafter prior to such completion and tender." [Emphasis added]

In other words, section 4.3 gives to Save-A-Lot two options to cancel the Lease in the event that the LP Work is not completed and possession delivered in a timely fashion: *First*, in the event the work is not done and possession tendered with ninety (90) days, and such failure continues for sixty (60) days more after notice of this failure is given, then Save-A-

470900-2

Lot can cancel the Lease on written notice, *provided* the delays are not caused by certain specified reasons beyond the control of Plaintiff. *Second*, and "*notwithstanding any delays, whether within or beyond the control of Lessor*," Save-A-Lot "may cancel this Lease" "if the LP Work has not been completed, the existing Farmer's Furniture lease terminated and actual exclusive possession of the Leased Premises tendered to Lessee *on or before the date six (6) months from the date hereof*." (Section 4.3, final sentence [emphasis added])

Plaintiff did not fulfill its obligation to complete the LP Work and tender actual and exclusive control of the Leased Premises to Save-A-Lot. Accordingly, six months after the date of the Lease, Save-A-Lot mailed written notice to Plaintiff that it was cancelling the Lease pursuant to the final sentence of Section 4.3, because Plaintiff had "failed to complete the LP Work and tender actual and exclusive possession of the Leased Premises to Lessee [Save-A-Lot] on or before the date six (6) months from the date of the Lease (January 10, 2008)." See Complaint, Exhibit B (letter from Save-A-Lot to Plaintiff).

Plaintiff does not deny the truth of Save-A-Lot's assertion in its termination letter that the LP work was not completed and possession tendered within six months. Nor does Plaintiff allege anywhere in its Complaint that it otherwise performed its obligations under the Lease. Instead, Plaintiff alleges that the "reason" given by Save-A-Lot "for terminating the lease was a pretext; the defendant made a corporate decision to close several stores in that part of Texas." (Cplt. ¶9) However, while Plaintiff purports to dispute the *motive* for Save-A-Lot's cancellation of the Lease, it makes no allegation disputing the *factual basis* set forth in Save-A-Lot's termination letter entitling it to terminate the Lease pursuant to the final sentence of Section 4.3. Indeed, Plaintiff conspicuously *does not allege* that it had completed

the LP Work and tendered actual and exclusive possession of the Leased Premises to Save-A-Lot on or before the date six (6) months from the date of the Lease.

These allegations fail to state the elements of a claim for breach of contract. Indeed, they admit to facts that conclusively entitled Save-A-Lot to cancel the Lease under the clear and unambiguous terms of §4.3.

## Argument

### I.     STANDARD ON MOTION TO DIMSISS

"Under Rule 12(b)(6), 'the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted.'" First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994). As recently explained in Egan v. Marsh & McLennan Cos., No. 07 Civ. 7134 (SAS), 43 Employee Benefits Cas. (BNA) 1661, 2008 U.S. Dist. LEXIS 6647 (S.D.N.Y., Jan. 29, 2008), the result of last year's Supreme Court decision in Bell Atlantic Corp., et al. v. Twombly, _ U.S. _, 127 S. Ct. 1955 (2007), is that

> "... To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of 'plausibility.' Although the complaint need not provide 'detailed factual allegations,' it must 'amplify a claim with some factual allegations ... to render the claim plausible.' The standard is no longer that a complaint can be dismissed only if there is 'no set of facts' that plaintiff could prove 'which would entitle him to relief.' Rather, the complaint must provide 'the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'
>
> When deciding a motion to dismiss under Rule 12(b)(6), the court must 'accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in plaintiff's favor.' Even though plaintiff's allegations are taken as true, the claim may still fail as a matter of law if the claim is not legally feasible. '[B]ald assertions and conclusions of law will not suffice.' Moreover, a court need not accord 'legal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness.'"

6

470900-2

Id., 2008 U.S. Dist. LEXIS 6647 (S.D.N.Y., Jan. 29, 2008), at *10-12 [footnotes and citations omitted]. See also, Twombly, 127 S.Ct. at 1964-66, 1974; Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).[2]

Moreover, and particularly important here, Twombly warned that "It is not ... proper to assume that [the plaintiff] can prove facts that it has *not alleged* ..." Id., 127 S. Ct. at 1969n.8 [emphasis added], *quoting* Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526, (1983).

Finally,

> "The interpretation of an unambiguous contract is a question of law for the court, and the provisions of a contract addressing the rights of the parties will prevail over the allegations in a complaint. At the motion to dismiss stage, where a plaintiff's factual allegations or legal conclusions are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference[,] in the context of a breach of contract action." [Footnotes and citations omitted]

Egan v. Marsh & McLennan, supra.

Viewed against this standard, Plaintiff's Complaint fails to state a claim for which relief can be granted under the substantive law of contracts.

## II.   PLAINTIFF HAS FAILED TO PLEAD A VALID CLAIM FOR BREACH OF CONTRACT

### A.   Plaintiff Has Failed To Plead And Cannot Plead Its Own Performance

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) *adequate performance of the contract by the plaintiff*, (3) *breach* of contract by the defendant, and (4) damages."

---

[2] Twombly was an antitrust case, but the Second Circuit has concluded that the application of Twombly is not restricted to antitrust cases. Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) [emphasis added]; followed, Advanced Marketing Group, Inc. v. Business Payment Systems, LLC, 481 F. Supp.2d 319, 323 (S.D.N.Y. 2007); see also, Terwilliger v. Terwilliger, 206 F.3d 240, 246 (2d Cir. 2000). Texas law is the same: Lewis v. Bank of America NA, 343 F.3d 540, 545 (5th Cir. 2003) (under Texas law, plaintiff must allege: "1) the existence of a valid contract; 2) *performance or tendered performance by the plaintiff*; 3) *breach* of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach" [emphasis added]), *citing* Palmer v. Espey Huston & Assocs., 84 S.W.3d 345, 353 (Tex. App. 13th Dist. – Corpus Christie 2002).[3]

Plaintiff has failed to plead these elements. In particular, Plaintiff does not allege that it performed the LP Work required by Lease §§ 4.1 and 4.3, nor does it allege that it otherwise performed its obligations under the Lease. Plaintiff tries to mask its inability to plead its own due performance under Section 4.3 (consistent with the strictures of Rule 11), by alleging that it "… expended substantial sums to prepare the premises for the defendant …" (Cplt. ¶8) But this artfully vague formulation falls fatally short of the necessary allegation that Plaintiff *satisfied* Lease Article 4 by *in fact* **completing** the LP Work *and* **tendering** actual and exclusive possession to Save-A-Lot on or before January 10, 2008 — or at *any* time. Because Plaintiff has failed to plead facts supporting the existence of all the

---

[3] The Lease has no choice of law provision. Although Plaintiff is headquartered in New York, it is a Texas limited liability company and this action involves a Lease of real property located in Texas. However, because, as explained in the text, the decision on this motion should be the same under either Texas or New York law, an extended conflict of laws analysis is not here necessary. See Allstate Ins. Co. v. Stolarz, 81 N.Y.2d 219, 223, 613 N.E.2d 936, 597 N.Y.S.2d 904 (1993) (first step in analyzing potential choice of law issue is to determine whether there is an actual conflict between the laws involved; if no conflict exists, then the inquiry ends); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97, 61 S.Ct. 1020, 1021-22 (1941) (federal court in diversity case applies choice of law analysis of the forum state).

470900-2

elements of a claim for breach of contract, it has not stated a claim. See cases cited supra; Twombly, supra.

Importantly, Plaintiff's failure to plead its own performance is not a mere oversight that can plausibly be fixed by re-pleading. Plaintiff attaches to its Complaint Save-A-Lot's letter asserting that the LP Work has not been completed and possession has not been tendered. Plaintiff nowhere denies this or alleges that it is not true. Instead, Plaintiff merely alleges that the reason given is a "pretext." (Cplt. ¶9) This is a mere epithet, which is meaningless. Cf. Buena Vista Home Entertainment, Inc. v. Wachovia Bank, N.A. (In re Musicland Holding Corp), No. 07 Civ 8423 (RWS), 2008 U.S. Dist. LEXIS 40865 (S.D.N.Y., May 21, 2008), at *26 (allegation that loan was a "charade" was meaningless and did not support claim). The only explanation Plaintiff provides as to why the reason given by Save-A-Lot was a "pretext" is that "defendant made a corporate decision to close several stores in that part of Texas." (Cplt. ¶9) But Plaintiff expressly does *not* allege that Save-A-Lot's letter was *factually* incorrect in stating that Plaintiff had not completed the LP Work or tendered possession as required. By this admission that it did not itself perform, Plaintiff shows that it cannot properly allege all the elements of a breach of contract claim. See Advanced Marketing, supra, 481 F. Supp.2d 319.

In Advanced Marketing, the parties entered into a marketing agreement and addendum, by which plaintiff was to provide "100 accounts monthly," in exchange for certain percentage payments. Defendant reduced its payments to plaintiff, and plaintiff sued for breach of contract. Plaintiff's pleading indicated that it had generated an average of 92 accounts per month during the relevant period. On defendant's motion to dismiss, the court construed the term "monthly" to mean "each month", so that a failure to provide at least 100

accounts in any month constituted a breach by plaintiff. Like the case at Bar, the contract had a provision that expressly entitled defendant to terminate it. Unlike the case at Bar, however, defendant did not comply with the requirements of that provision. Nevertheless, the court granted defendant's motion to dismiss. The court explained that defendant's failure to properly terminate "does not, however, do away with AMG's requirement to state facts sufficient to plead adequate performance as to its required conduct." Id., 481 F. Supp.2d at 324.

As in Advanced Marketing, so too here: Plaintiff has not pleaded and cannot properly plead its own performance, and so its claim for breach of the Lease must be dismissed.

    **B.**    **Save-A-Lot Did Not Breach The Lease:
The Lease Expressly Entitled Defendant To Cancel It Upon
Plaintiff's Failure To Finish The LP Work And Tender Possession**

By Plaintiff's same admission that it did not finish the LP Work and tender possession within six months of the Lease date, Plaintiff also establishes that Save-A-Lot has not breached the Lease, both because Save-A-Lot's obligation to pay rent has not yet accrued pursuant to Lease §2.1, and because the Lease §4.3 expressly granted Save-A-Lot the right to cancel it. These Lease provisions are clear and unambiguous and, under either Texas or New York law, must be enforced as written.

When interpreting contracts, including leases, the primary concern of courts in both Texas and New York is to give effect to the parties' intentions *as expressed in the contract*. In determining the parties' intentions, intent must be taken from the agreement itself, not from the parties' present interpretation. The agreement will be enforced as the parties have made it, without regard to whether they contracted wisely. See CMS Partners Ltd. v.

Plumrose USA, 101 S.W.3d 730, 732-33 (6th Dist.–Texarkana 2003) (citing cases); Chapman & Cole and CCP, Ltd. v. Itel Container Int'l, B.V., 865 F.2d 676, 681 (5th Cir. 1989) (construing lease under Texas law: "The objective intentions of the parties from a review of the written language of the contract control regardless of whether it actually reflects the subjective intentions as well"); Terwilliger, supra, 206 F.3d at 245-46; Rodolitz v. Neptune Paper Products, Inc., 22 N.Y.2d 383, 387, 239 N.E.2d 628, 631, 292 N.Y.S.2d 878, 881 (1968) (courts "concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote"); Fox Paper, Ltd. v. Schwarzman, 168 A.D.2d 604, 605, 563 N.Y.S.2d 439, 441 (2d Dep't 1990) ("Interpretation of a lease is governed by the same rules as are applicable to contracts generally, and, where the intent of the parties is unambiguously set forth in a written agreement, the court will concern itself with the parties' intent only insofar as it may be discerned from the four corners of the document ... Moreover, the proper aim of the court, which may not rewrite the contract, is to arrive at a construction which will give meaning to all of the language employed by the parties").

### 1. **Save-A-Lot's Obligation To Pay Rent Has Not Accrued**

As noted above, Lease §2.1 provides that Save-A-Lot's "obligation to pay base rent and additional rent ... shall begin on the earlier of (i) the day Lessee opens for business with the public in the Leased Premises, or (ii) the one hundred twentieth (120th) day following the acceptance by Lessee of possession of the Leased Premises as provided for in Article 4 ..." As Plaintiff itself alleges, Save-A-Lot did *not* open for business, nor did it accept possession of the Premises. Instead, it cancelled the Lease. Further, it is clear from Plaintiff's

11

470900-2

Complaint that Plaintiff did *not* complete the LP Work and tender possession as required by Lease Article 4.

The relevant language of the Lease is plain and unambiguous, and must be enforced as written. By the plain and unambiguous language of the Lease, Save-A-Lot's obligation to pay rent never accrued.

In Langham's Estate v. Levy, 198 S.W.2d 747 (Tex. App.–Beaumont 1946), landlord agreed to remodel the premises to be leased to include a store-room. The remodeling turned out to be more costly than anticipated, and the store-room was not prepared. Tenant never took possession and never paid rent. In upholding a damages award to *tenant* for *landlord's* breach, the court held that the landlord's work was a precondition to tenant's obligation to pay rent. Id., at 754. Similarly, in Nitti v. Goodfellow, 256 A.D.2d 1082, 682 N.Y.S.2d 762 (4th Dep't 1998), app'l dism'd, 93 N.Y.2d 999, 717 N.E.2d 1081 (1999), the lease required landlord to "'provide the remodeling and decorations provided in attached Plans and Specifications'" prior to a specified date. It also provided "that the lease term was for 10 years, commencing when the 'premises are ready for occupancy …'," and "that defendant [tenant] was not obligated to occupy the premises and pay rent until the premise were in fact ready for occupancy." In awarding judgment for defendant-tenant on the landlord's lawsuit for unpaid rent and tenant's counterclaims, the court held that "these provisions compel the conclusion that plaintiffs were obligated to finish all remodeling and decorating work before defendant was obligated to occupy the premises and pay rent." Because plaintiffs had completed only some, but not all of the necessary work, they "failed to perform their obligations under the lease, [and] defendant never became obligated to occupy the premises and pay rent." Id.

Here as well, Lease §2.1 could not be more clear that Save-A-Lot's obligation to pay rent did not commence until the LP Work was completed and Save-A-Lot accepted possession pursuant to Article 4. Since it is undisputed that this never happened, Save-A-Lot has no obligation to pay rent, and Plaintiff's action to recover rent must be dismissed.

### 2. Save-A-Lot Had A Clearly Expressed And Unconditional Right To Cancel The Lease

As noted above, the final sentence of Lease §4.3 grants to Save-A-Lot an unconditional right to cancel the Lease if the LP Work is not completed and possession tendered within six months of the Lease date:

> "*Notwithstanding* any delays, *whether within or beyond the control of Lessor*, if the LP Work has not been complete, the existing Farmer's Furniture lease terminated and actual exclusive possession of the Leased Premises tendered to Lessee on or before the date six (6) months from the date hereof, Lessee may cancel this Lease by notice in writing to Lessor given at any time thereafter prior to such completion and tender." [Emphasis added]

This language is clear and unambiguous, and just as clearly entitled Save-A-Lot to cancel the Lease, as it did, upon Plaintiff's failure to complete the LP Work and tender possession of the Premises within six months.

Moreover, this is not changed by Plaintiff's conclusory assertion that the reason given by Save-A-Lot for cancelling the Lease was a "pretext" (Cplt. ¶9). As noted above, this is a mere epithet. Even more important, Save-A-Lot's "reason" for canceling the Lease is irrelevant. Indeed, since the final sentence of section 4.3 provides that Save-A-Lot "may" cancel the Lease, it is inescapable that both parties contemplated that Save-A-Lot would cancel the Lease if it was in *Save-A-Lot's* interest for it to do so. The only thing that is relevant here is that Lease §4.3 expressly gave Save-A-Lot the *right* to cancel the Lease upon Plaintiff's failure to finish the LP Work and tender possession within six months.

Save-A-Lot's exercise of a right expressly granted by contract, regardless of its motive, is fully permissible and cannot give rise to any claim by Plaintiff. A party may invoke and take advantage of any right expressly granted by the contract, even if doing so prejudices the other party. E.g., Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006) ("the implied covenant [of good faith and fair dealing] does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract."); Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-99 (2d Cir. 2005) (implied covenant cannot create a substantive obligation not included by the parties); State Street Bank & Tr. Co. v. Inversioines Errazuriz Ltda., 374 F.3d 158, 170 (2d Cir. 2004) (covenant of good faith cannot impose an obligation or restriction inconsistent with other terms of contract; allegation that bank unreasonably withheld consent to debtor's sale of collateral stated no claim [citing cases]); Murphy v. American Home Products Corp., 58 N.Y.2d 293, 304, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232, 237 (1983) (firing of at-will employee a day before pension would have vested did not support claim for breach of contract or covenant of good faith).[4]

Accordingly, Save-A-Lot properly terminated the Lease pursuant to its express right to do so granted by the final sentence of Lease §4.3.

## Conclusion

For all of the foregoing reasons, Defendant Moran Foods, Inc. d/b/a Save-A-Lot, Ltd. respectfully urges this Court to grant its Motion and dismiss Plaintiff's Complaint with

---

[4] The implied covenant of good faith and fair dealing is not even recognized in Texas, except under circumstances not present here, where the parties have a special relationship or the contract expressly grants to one party "discretion". E.g., Subaru of Am. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 225 (Tex. 2002); Young v. Neatherlin, 102 S.W.3d 415, 420 (Tex. App., 14th Dist.–Houston, 2003).

470900-2

prejudice.

Date:   June 6, 2008
        Philadelphia, PA

                                    Respectfully submitted,

                                    **SPECTOR GADON & ROSEN, PC**

                                    By: /s/ David Picker
                                         David B. Picker, Esquire [DP-9658]
                                         Suzanne Ilene Schiller [*pro hac vice* pending]
                                    1635 Market Street, 7th Floor
                                    Philadelphia, PA 19103
                                    (215) 241-8888 / FAX- (215) 241-8844
                                    e-mail: dpicker@lawsgr.com
                                    *Lead Counsel for Defendant*

                                    David N. Mair [DM-8883]
                                    **KAISER SAURBORN & MAIR, P.C.**
                                    111 Broadway
                                    New York, New York 10006
                                    Tel:  212-338-9100 / FAX- 212-338-9088
                                    e-mail: mair@ksmlaw.com
                                    *Local Counsel for Defendant*

470900-2

## CERTIFICATE OF SERVICE

I, David B. Picker, a member of the Bar of this Court, hereby certify that I caused a true and correct copy of the foregoing Notice of Motion to Dismiss Intervene, supporting Affirmation, and Memorandum of Law in Support of Motion to Dismiss to be served by first class U.S. mail, postage prepaid, this **6**th day of **June**, 2008, upon the following:

David Jaroslavicz, Esquire
Jaroslawicz & Jaros, LLC
225 Broadway – 24th Floor
New York, NY 10007

Notice was also provided by electronic filing on the Court's ECF electronic filing system.

Date: June 6, 2008
      Philadelphia, PA

_____
David B. Picker

475596-1