David B. Picker [DP-9658]
Suzanne Ilene Schiller [*pro hac vice* admission pending]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888 / FAX- (215) 241-8844
e-mail: dpicker@lawsgr.com
*Lead Counsel for Defendant*

David N. Mair [DM-8883]
KAISER SAURBORN & MAIR, P.C.
111 Broadway
New York, New York 10006
Tel:  212-338-9100 / FAX- 212-338-9088
e-mail: mair@ksmlaw.com
*Local Counsel for Defendant*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JEFFERSON CITY COMMONS, LLC, | : | |
| | : | Docket No. **08 Civ. 4866 (LAK)** |
| Plaintiff, | : | ECF Case |
| v. | : | |
| | : | |
| MORAN FOODS, INC. d/b/a | : | |
| SAVE-A-LOT, LTD., | : | |
| | : | |
| Defendant. | : | |

## PART 2 TO DECLARATION OF DAVID B. PICKER IN
## SUPPORT OF MOTION TO DISMISS – CONTINUATION OF EXHIBIT 1

476138-1

## EXHIBIT A

**SITE PLAN**

Leased Premises is outlined in red (Section 1.1)

Shopping Center is outlined in blue (Section 1.1)

No-Build Area is shown cross-hatched (Section 6.2)

Portion of Parking Area outlined in orange (Section 8.2)

EXHIBIT A

# JEFFERSON CITY COMMONS, LLC.
## PORT ARTHUR, TEXAS



## EXHIBIT AA

### LEGAL DESCRIPTION OF SHOPPING CENTER

GF# 250886
Commitment No. 44-901-80-250886                                    Page 1

DESCRIPTION

NOTEEXHIBIT "A"

BEING that certain tract of land containing 23.484 acres, more or less, out of and a part of Lots One, Two, Seven and Eight (1, 2, 7 & 8), Block Six (6), Range "G", of The Lands of the Port Arthur Land Company, Port Arthur, Jefferson County, Texas, as said tract is more particularly described by metes and bounds as follows:

BEING a 23.484 acre tract of land consisting of those certain tracts of land conveyed to Jefferson City interest, more fully described and recorded as Tract 1, Tract 2A and Tract 2B in Volume 1673, Page 463 of the Deed Records of Jefferson County, Texas. Said 23.484 acre tract also being out of and a part of Lots 1, 2, 7 and 8, Block 6, Range "G" of the Port Arthur Land Company Subdivision as recorded in Volume 1, Page 22 of the Map Records of Jefferson County, Texas and is more particularly described as follows:

BEGINNING at a concrete monument found at the intersection of the Southwest line of Twin City Highway (State Highway 347), right-of-way and the Northwest line of 32nd Street right-of-way (60 feet wide), same being the East corner of said Tract 2B;

THENCE South 41 deg. 13 min. 00 sec. West along and with the Southeast line of said Jefferson City tracts, same being the Northwest line of said 32nd Street right-of-way, a distance of 655.81 feet to a 3/4 inch iron pipe found for the South corner of said Jefferson City Tract 1, same being the East corner of the Normandy Place Subdivision as recorded in Volume 1560, Page 326 of said Deed Records;

THENCE in a Northwesterly direction along and with the Southwest line of said Jefferson City Tract 1, same being the Northeast line of said Normandy Place Subdivision the following courses and distances:

North 48 deg. 49 min. 55 sec. West a distance of 1085.90 feet to a 5/8 inch iron found for corner;
North 48 deg. 51 min. 48 sec. West a distance of 398.13 feet to a 5/8 inch iron rod set for corner;

THENCE in Northeasterly direction along and with the Northwest line of said Jefferson City Tract 1, same being the Southeast line of that certain Charles S. Nacol and Ida Mae Nacol 3.4094 acre tract of land, more fully described and recorded in Volume 1880, Page 380 of said Deed Records the following courses and distances:

North 41 deg. 06 min. 23 sec. East a distance of 154.87 feet to a bent 5/8 inch iron found for corner;
North 48 deg. 53 min. 37 sec. West a distance of 40.00 feet to a 5/8 inch iron rod set for corner;
North 41 deg. 06 min. 23 sec. East a distance of 196.00 feet to a 5/8 inch iron rod set for corner;

North 48 deg. 53 min. 37 sec. East a distance of 40.00 feet to a 5/8 inch iron rod set for corner;

North 41 deg. 06 min. 23 sec. East a distance of 328.88 feet to a 1/2 inch iron rod

GF# 250886
Commitment No. 44-901-80-250886

### DESCRIPTION

Found for corner in the Southwest line of said Twin City Highway (State Highway 347) right-of-way;

THENCE in a Southeasterly direction along and with the Northeast line of said Jefferson City Tract 1 and Tract 2B, same being the Southeast line of said Twin City Highway (State Highway 347) right-of-way the following courses and distances:

South 48 deg. 53 min. 17 sec. East a distance of 796.64 feet to a 5/8 inch iron rod set for corner;

South 50 deg. 07 min. 17 sec. East a distance of 688.89 feet to the PLACE OF BEGINNING, containing 23.484 acres of land, more or less.

NOTE:   This Company does not represent that the above acreage or square footage calculations are correct.

FROM :Malachite Group of Texas Inc    FAX NO. :4059622428    Oct. 16 2006 03:06PM P2

INITIALS:
TENANT: *M.Q.B.*
LANDLORD: *27*

# EXHIBIT "B"

### ATTACHED TO AND MADE A PART
### OF
### SHOPPING CENTER LEASE AGREEMENT

#### Legal Description

Being certain store premises in the Jefferson City Shopping Center in Port Arthur, Texas, containing approximately Eighteen Thousand (18,000) square feet of ground floor store space, being an area fronting (90) ninety feet with a depth of (200)two hundred feet, as shown and delineated upon the attached plot plan of said Jefferson city Shopping Center (Exhibit "A") as that area outlined in or shaded, reference to such plot plan (Exhibit "A") being here made for all purposes.

## EXHIBIT B

## LP WORK

All utilities shall be furnished to the Leased Premises and shall be in good operating order and shall be separately metered. Upon delivery to Lessee, the Leased Premises shall be in compliance with all applicable state and local building, fire and zoning codes. Lessor shall, at Lessor's expense, deliver the Leased Premises to Lessee in broom-clean condition and shall place the roof, floor, exterior walls, mechanical systems, heating, ventilating and air-conditioning systems, utilities, electrical systems, plumbing systems, sewer systems and all other systems and facilities servicing the Leased Premises, in good operating order and condition and in compliance with all applicable governmental laws, ordinances, regulations, codes and requirements, including without limitation, state and local codes, all applicable fire protection requirements and all requirements of the fire marshal.

In addition to the items provided for in the preceding paragraph, the Lessor, at Lessor's expense, will do the following:

1.    Lessor to provide 25 tons of HVAC as follows: two (2) five (5) ton and two (2) seven and half (7 1/2) ton HVAC systems with ductwork, thermostats, diffusers and hook-up per Save-A-Lot plans and specifications.

2.    Lessor to provide electrical service which shall consist of 208/240 volt, 3-phase, 4-wire, 1200 amp service and panels, including breakers and outlets with main disconnect at the rear of the store per Save-A-Lot plans and specifications.

3.    Lessor to provide 4 inches of a smooth concrete slab per Save-A-Lot plans and specifications.

4.    Lessor to provide two (2) handicapped restrooms per local and state codes.  Restrooms are to include all necessary fixtures such as handicap rails, sink, mirrors, soap and paper dispensers, ceiling lights, exhaust fans, drinking fountain and water closets.  Walls finished with 5RD.  Metal door with privacy lockset and self closure per Save-A-Lot plans and specifications.

5.    Lessor to provide a dropped ceiling with 1-8ft T8 4 bulb fixture per 64 sq. ft. of sales floor on 8ft. centers and all ceiling tiles in a suspended ceiling system.  Said tile and grid system shall be per Save-A-Lot plans and specifications.

6.    Lessor to provide drywall extending to the bottom of the roof structure; drywall surface to be taped and sanded with one coat of primer on all perimeter and demising walls per state and local codes and Save-A-Lot plans and specifications.

7.    Lessor shall complete an automatic fire sprinkler system, if required, above and below the ceiling to meet state and local code requirements and Save-A-Lot plans and specifications.

8.    Lessor to provide a glass storefront with 40 linear feet of glass and two (2) automatic doors per Save-A-Lot plans and specifications.

9.    Lessor to provide all roof penetrations sealed per Save-A-Lot plans and specifications.

10.   Lessor to provide an 8' x 10' overhead coiling door along with a 3' x 7' fire door per state and local codes and Save-A-Lot plans and specifications.

11.   Lessor to re-stripe the portion of the parking lot in front of the Leased Premises; said portion to be the area designated as the "No Build Area" on Exhibit A.

12.   Lessor to improve the front fascia of the building with dryvit or similar finish material. The front exterior plans will be mutually agreeable to the Lessor and Lessee.

13.   All construction shall meet ADA, EPA, OSHA and Health Department rules and regulations currently in effect, as well as any state and local code requirements. Further, Lessor covenants that the Leased Premises are free from asbestos, mold and other hazardous substances and gases; and Lessor shall remove (according to all applicable laws) any such asbestos and other hazardous substances and gases prior to delivery of the Leased Premises to Lessee.

Upon delivery of the Leased Premises to Lessee, Lessor shall provide and maintain (in compliance with state and local codes) all necessary pipes, mains, conduits, wire and cables to the Leased Premises for water, gas, electricity and telephone services. Lessor will provide telephone lines to the D-mark and to the Leased Premises. Notwithstanding the foregoing, Lessee will not be responsible for the cost of any utility tap fees, cost of meter installation or any other cost which may be levied by a utility provider other than those charges specifically related to the Lessee's consumption of such utility. Such costs shall be the sole responsibility of the Lessor.

<u>EXHIBIT C</u>

<u>SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT</u>

*<u>Jefferson City Shopping Center</u>*
*<u>3513 Twin City Highway</u>*
*<u>Port Arthur, TX</u>*

This Agreement is made by JEFFERSON CITY COMMONS, LLC, a Texas limited liability company ("Lessor"), _____ ("Mortgagee") and MORAN FOODS, INC., a Missouri corporation, d/b/a Save-A-Lot, Ltd. ("Lessee") as of the _____ day of _____, 20___ (the "Execution Date").

**RECITALS:**

A.  Lessor is the owner of certain property (the "Shopping Center") situate in the City of Port Arthur, County of Jefferson, State of Texas, and more particularly described in <u>Exhibit A</u> attached hereto;

B.  Lessor and Lessee are parties to a lease dated _____, 2007 as amended from time to time thereafter (said lease as so amended hereinafter referred to as Lease) covering a portion of the Shopping Center ("Leased Premises"), which Leased Premises are more fully described in the Lease;

C.  The Shopping Center is to be encumbered by a certain _____ ("Mortgage") to secure certain obligations of Lessor to Mortgagee, which Mortgage is more fully described as follows: _____ executed by Lessor to Mortgagee dated _____ and recorded in the office of _____, County of Jefferson, State of Texas as Document No. _____.

**AGREEMENT:**

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.  Mortgagee hereby gives its consent to the Lease. Mortgagee warrants and represents to Lessee that it is the owner of the Mortgage; that the Mortgage has not been assigned and that Mortgagee has caused no other liens or encumbrances to be created against the Shopping Center other than the Mortgage.

2.  Lessee, for itself and its successors and assigns, does hereby agree that all right, title and interest which Lessee, its successors and assigns, may have in and to the Leased Premises or any part thereof, shall be, and the same hereby is made, subject and subordinate to the lien of the Mortgage, with the same force and effect as though the Mortgage had been executed, delivered and recorded prior to the date of the Lease, provided that Mortgagee hereby agrees that all condemnation awards and property insurance proceeds payable with respect to the Shopping Center shall be applied and paid in the manner set forth in the Lease.

3.  So long as Lessee is not in default, beyond any applicable cure period, in the payment of

rent or in the performance of any of the terms, covenants or conditions of the Lease requiring performance on the part of Lessee, (a) Mortgagee will not join Lessee as a party defendant in any action or proceeding for the purpose of foreclosing the Mortgage; (b) any sale or transfer of the Shopping Center or of Lessor's interest in the Lease, pursuant to foreclosure of the Mortgage or voluntary conveyance or other proceeding in lieu of foreclosure, will be subject and subordinate to Lessee's possession under the Lease; and (c) the Lease will continue in full force and effect according to its terms.

4.   So long as Lessee is not in default, beyond any applicable cure period, in the payment of rent or in the performance of any of the terms, covenants or conditions of the Lease requiring performance on the part of Lessee, if the Shopping Center shall be transferred to and owned by Mortgagee, or any assignee of Mortgagee or purchaser at judicial sale or any transferee under an action in lieu thereof, by reason of foreclosure or other remedial proceedings brought by Mortgagee or any assignee of Mortgagee or by any other similar manner, Lessee's rights to possession of the Leased Premises under the Lease shall not be terminated thereby, rather Lessee shall attorn to and be bound to Mortgagee or any such assignee, purchaser or transferee under all of the terms, covenants and conditions of the Lease for the balance of the term thereof remaining; and Mortgagee or any such assignee, purchaser or transferee shall be bound, as the Lessor, to Lessee under all of the terms, covenants and conditions of the Lease for the balance of the term thereof remaining except that neither Mortgagee nor any such assignee, purchaser or transferee shall be:

4.1.   Bound by any rent or additional rent which Lessee may have paid for more than thirty (30) days in advance of its due date to any prior Lessor.

4.2.   Bound by any material amendment to the Lease entered into subsequent to the date of this Agreement which has not been consented to by Mortgagee which consent shall not be unreasonably withheld or delayed.

4.3.   Bound by any provision of the Lease restricting the use of properties owned by Mortgagee, other than the Shopping Center, for purposes which compete with Lessee.

5.   Subject to the provisions hereof, the Lease now is, and shall at all times continue to be, subject and subordinate in each and every respect to the lien of the Mortgage and to any and all amendments and renewals thereof.

6.   This Agreement shall be binding upon and shall inure to the benefit of Lessor, Mortgagee and Lessee, and their respective heirs, personal representatives, transferees, successors and assigns. Except as provided in Section 8, no action on the part of any party to this Agreement shall be construed to be a waiver, release or relinquishment of any rights under this Agreement unless said waiver, release or relinquishment is expressly contained in an instrument executed by the party against whom the waiver, release or relinquishment is being enforced.

7.   Lessee agrees that, during the term of the Mortgage, Lessee shall furnish to said Mortgagee the same notice or notices of default by Lessor that Lessee is required to furnish to Lessor under the Lease and Mortgagee shall have the same rights and period to cure such default as Lessor has under the Lease.

8.    Mortgagee agrees to notify Lessee in writing of any release, termination or satisfaction of the Mortgage.  If Lessee requests in writing that Mortgagee indicate whether the Mortgage has been released, terminated or satisfied and Mortgagee fails to provide written notice to Lessee indicating whether the Mortgage has been released, terminated or satisfied within twenty (20) days of such request, then Lessee shall no longer be required to give Mortgagee notices under Section 7 and Mortgagee shall not have the right to cure defaults as provided in Section 7 and Mortgagee's consent to material amendments to the Lease, as provided in Section 4.2, shall not be required.

9.    Lessor will by a separate Assignment of Leases and Rents (hereinafter referred to as the "Assignment of Leases") assign its interest in the rents and payments due under the Lease to Mortgagee as security for repayment of its obligations to Mortgagee described in the Mortgage.  If in the future there is a default by Lessor in the performance and observance of the terms of the Mortgage, Mortgagee may, at its option under the Assignment of Leases, require that all subsequent rents and other payments due Lessor under the Lease be paid directly to it.  Upon notification to that effect to Lessee by Mortgagee, Lessor hereby authorizes and directs Lessee, and Lessee agrees (provided that such agreement shall not affect or limit any of Lessee's rights under the Lease, including but not limited to any rights of offset), to pay any subsequent payments due to Lessor under the terms of the Lease to Mortgagee.  Lessor represents and warrants to Lessee that there are no other collateral assignments of the Lease or rents in effect, other than the Assignment of Leases to Mortgagee.  Lessor further agrees that this Agreement shall constitute a direction to and full authority to Lessee to pay all such amounts to Mortgagee without proof of the default relied upon and that Lessee is hereby irrevocably authorized to rely upon and comply with (and shall be fully protected in so doing) any notice or demand by Mortgagee for the payment to Mortgagee of any amounts due to Lessor under the Lease and Lessee shall have no duty or obligation to inquire as to whether any default under the Mortgage has actually occurred or is then existing.

10.    This Agreement is made and executed under and in all respects is to be governed by and construed in accordance with the laws of the State of Texas.

11.    Any notices required or given under this Agreement shall be in writing and shall be sent by U. S. Certified Mail, postage prepaid and shall be sent to the following addresses:

To Mortgagee:    _____

_____

_____

To Lessor:    Jefferson City Commons, LLC
48 East Old Country, #203
Mineola, TX 11501

To Lessee:    Moran Foods, Inc.

Attn:    Asset    Management    Group

100    Corporate    Office    Drive

Earth City, MO 63045

With copy to:    Moran Foods, Inc.
Attn: Legal Department
100 Corporate Office Drive
Earth City, Missouri 63045

The addresses for such notices may be changed by written notice to the other party of at least thirty (30) days given as provided above.  Notices given as provided above shall be deemed complete upon mailing.

12.    This Agreement may be signed in counterparts and each counterpart shall be effective as an original when a counterpart has been signed by all parties.

13.    This Agreement contains the entire agreement between the parties concerning the matters addressed herein and no representations, inducements, promises, understandings or agreements (whether express or implied and whether oral or written) made before the execution of this Agreement will change the terms of this Agreement. No covenants shall be implied into any of the terms or provisions of this Agreement. This Agreement may be changed or modified only by a writing that all parties have signed.  This Agreement shall not be binding on any party until it is executed and delivered by each party hereto.

*[Signature Page Follows]*

The parties hereto have executed this Agreement as of the Execution date.

LESSOR:
JEFFERSON CITY COMMONS, LLC

By:       _____
Name:  _____
Its:       _____

MORTGAGEE:

_____

By:       _____
Name:  _____
Its:       _____

LESSEE:
MORAN FOODS, INC.

By:       _____
Name:  _____
Its:       _____

## ACKNOWLEDGMENTS

STATE OF _____ )

                          ) SS.

COUNTY OF_____ )

On this _____ day of _____, 200__, before me, a Notary Public in and for said County, personally appeared _____, to me personally known, who being by me duly sworn, did say that he/she is _____ of _____, a _____, and acknowledged the execution of the foregoing instrument to be the voluntary act and deed of said _____ by it voluntarily executed.

_____
Notary Public

Commission Expiration Date:

STATE OF _____ )

                          ) SS.

COUNTY OF_____ )

On this _____ day of _____, 200__, before me, a Notary Public in and for said County, personally appeared _____, to me personally known, who being by me duly sworn, did say that he/she is _____ of _____, and acknowledged the execution of the foregoing instrument to be the voluntary act and deed of said _____ by it voluntarily executed.

_____
Notary Public

Commission Expiration Date:

STATE OF MISSOURI      )
                                     )SS.

COUNTY OF ST. LOUIS    )

On this _____ day of _____, 200__, before me, a Notary Public in and for said County, personally appeared _____, to me personally known, who being by me duly sworn, did say that he/she is Vice President of Moran Foods, Inc., a Missouri corporation, and acknowledged the execution of the foregoing instrument to be the voluntary act and deed of said corporation by it voluntarily executed.

_____

Notary Public

My Commission Expires:

Drafted By:
MORAN FOODS, INC.
Attn: Legal Department
100 Corporate Office Drive
Earth City, Missouri 63045

## EXHIBIT D

## MEMORANDUM OF LEASE

### *Jefferson City Shopping Center*
### *3513 Twin City Highway*
### *Port Arthur, TX*

This Memorandum of Lease is entered into and by JEFFERSON CITY COMMONS, LLC, a Texas limited liability company ("Lessor") and MORAN FOODS, INC., a Missouri corporation, d/b/a Save A Lot, Ltd. ("Lessee") as of the _____ day of _____, 2007 (the "Execution Date").

### RECITALS:

A.    Lessor and Lessee have entered into a certain lease dated _____, 2007 (the "Lease"), whereby Lessor has leased to Lessee certain real property, together with all improvements thereon, outlined in red on the site plan attached hereto as Exhibit A and made a part hereof (the "Premises"). The Premises are part of the shopping center on the property legally described on Exhibit AA attached hereto and made a part hereof (the "Shopping Center").

B.    The parties wish to give notice of the existence of the Lease.

    NOW, THEREFORE, in consideration of $1.00 and other good and valuable consideration, the receipt and adequacy whereof are hereby acknowledged, the parties hereto agree as follows:

1.    Pursuant to the Lease, Lessor has demised and leased to Lessee, and Lessee has hired and taken from Lessor, the Leased Premises.

2.    The term of the Lease will commence on the earlier of (a) Lessee's opening of the Premises for business with the public, or (b) 120 days following the acceptance by Lessee of possession of the Leased Premises as provided for in Article 4 of the Lease (the "Commencement Date") and shall end on the last day of the seventh (7th) lease year, as defined in the Lease. Lessee has the right and privilege to extend the Lease for three (3) successive extension terms of five (5) years each.

3.    Pursuant to the Lease, the Lessor agrees that no portion of the Shopping Center, except for the Leased Premises as to Section 3.1, shall be used or operated as follows:

    3.1    as a supermarket or other store, or department within a store, for the sale of food, groceries, fruit, produce, dairy products, vegetables, bakery products, or meats; or

    3.2    as an adult bookstore, massage parlor, or any other establishment which provides live adult entertainment or which sells, rents or exhibits pornographic or obscene materials, as an abortion clinic, flea market, or vehicle sales; or

    3.3    within two hundred fifty (250) feet of the Leased Premises as a nightclub (not including establishments with live music and dancing which operate primarily as

restaurants) or discotheque, off-track betting business, or store selling strictly firearms or ammunition.

3.4    In addition, no portion of the Shopping Center located between and including the premises numbered twenty-three (23) and seventeen (17) on Exhibit A shall be used or operated as a movie theatre, tire store and service facility with service bays, or so-called "call center".

The restrictions in Section 3.1 shall not apply to (i) the following existing tenants (their successors and assigns; provided that Lessor agrees to withhold its consent to any assignment, sublease or change in use, which would conflict with the exclusive use granted to Lessee herein): Port Arthur Bingo, Dollar General, Citi Trends, Ramirez Imports, Texas State Optical, Naomi Fashions, Moon Palace, Sav-On Office Supplies, One Stop Beauty, Beauty Salon, Sarah's Bakery, Rainbow Apparel, Sun Loan Company, Side Pocket, Affordable Furniture, Colors for Men, Dollar Supreme, Biomat USA, Inc., Burke's Outlet, La Morenita Meat Market, Radio Shack, EZ Pawn, Texas State Bank, Burger King, Paradise Café, Ice Cream Store, for so long as such tenant is operating in its existing premises under its existing lease and for the purposes already permitted in its existing lease; (ii) restaurants (including fast food restaurants, delicatessens, eat in restaurants and take out restaurants) from selling prepared foods for on and off premises consumption; (iii) discount general merchandise stores such as, but not limited to, stores such as Family Dollar, Dollar Tree and Big Lots; provided that not more than 150 linear feet of total shelving area (including coolers and freezers) shall be used for the sale/display of food items for off-premises consumption and not more than two 4-foot coolers and one 4-foot freezer for the sale/display of food items for off-premises consumption; or (iv) the selling of food items as incidental to a tenant's primary use. For purposes hereof, the term "incidental" shall mean that not more than ten (10) linear feet of total shelving area may be devoted to the sale/display of food items. Notwithstanding the foregoing, in no event shall any portion of the Shopping Center (except for the Leased Premises and the existing La Morenita Meat Market, its successors and assigns, for so long as such La Morenita Meat Market (or its successors/assigns) is operating in its existing premises under its existing lease and for the purposes already permitted in its existing lease) be used for the sale or display of fresh fruit and produce, fresh butchered or case-ready meat, poultry or fish products.

4.    The terms and conditions of the Lease are incorporated by reference into this Memorandum of Lease as if such terms were written out at length. In the event of a conflict between this Memorandum of Lease and the Lease, the terms and conditions of the Lease shall govern. For a complete statement of the rights, privileges and obligations created under and by the Lease, reference is hereby made to the Lease.

*[Signature Page Follows]*

Lessee and Lessor have executed this Memorandum of Lease as of the Execution Date.

LESSEE:                                    LESSOR:

MORAN FOODS, INC.                          JEFFERSON CITY COMMONS, LLC


By:_____               By:_____

Name:__G. F. Meyer_____          Name:_____

Its:__Vice President_____         Its:_____


Witness:_____              Witness:_____
Print Name:_____              Print Name:_____


Witness:_____              Witness:_____
Print Name:_____              Print Name:_____

STATE OF MISSOURI     )
                           ) SS.

COUNTY OF ST. LOUIS   )

On this _____ day of _____, 2007, before me, a Notary Public in and for said County, personally appeared G. F. Meyer, to me personally known, who being by me duly sworn, did say that he is Vice President of Moran Foods, Inc., a Missouri corporation, and acknowledged the execution of the foregoing instrument to be the voluntary act and deed of said corporation by it voluntarily executed.

_____
Notary Public

My Commission Expires:

STATE OF _____)
                           ) SS.

COUNTY OF_____)

On this _____ day of _____, 2007, before me, a Notary Public in and for said County, personally appeared _____, to me personally known, who being by me duly sworn, did say that he/she is _____ of _____, a _____, and acknowledged the execution of the foregoing instrument to be the voluntary act and deed of said _____ by it voluntarily executed.

_____
Notary Public

Commission Expiration Date:

This Instrument was drafted by:
MORAN FOODS, INC.
Attn: Legal Department
100 Corporate Office Drive
Earth City, Missouri 63045

## EXHIBIT A

Site Plan to Memorandum of Lease

## EXHIBIT AA

Legal Description to Memorandum of Lease

## EXHIBIT E

### EXISTING TENANT EXCLUSIVES

# JEFFERSON CITY SHOPPING CENTER
## LIST OF TENANTS EXCLUSIONS, CLAUSES
## AND RESTRICTIONS SUMMARY

1. **PORT ARTHUR BINGO** - NON-COMPETE ADDENDUM: LANDLORD SHALL NOT LEASE SPACE OR OTHERWISE PROVIDE FACILITIES FOR BUSINESSES OR OTHER OPERATIONS THAT ARE DEEMED COMPETITIVE TO TENANT'S BUSINESS. THIS INCLUDES THE FOLLOWING: BINGO OR BINGO RELATED OPERATIONS AND SUPPLIES, AMUSEMENT DEVICES SUCH AS "8 LINERS" AND OTHER ELECTRONIC AND/OR MECHANICAL DEVICES THAT ALLOW PATRONS THE CHANCE TO WIN PRIZES OF CASH, REPRESENTATIONS OF CASH, AND/OR MERCHANDISE.

2. **DOLLAR GENERAL** - LESSOR COVENANTS AND AGREES NOT TO LEASE, RENT, OCCUPY, OR ALLOW TO BE OCCUPIED, ANY PART OF THE SHOPPING CENTER PREMISES FOR THE PURPOSE OF CONDUCTING BUSINESS AS OR FOR USE AS A FAMILY DOLLAR STORE, BILL'S DOLLAR STORE, FRED'S OR SUPER TEN. SHOULD LESSEE, OR A SUBTENANT OR ASSIGNEE OF LESSEE, INTENTIONALLY CEASE TO CONDUCT BUSINESS IN THE DEMISED PREMISES, THEN THIS COVENANT SHALL TERMINATE UPON THE DATE OF CESSATION OF THE BUSINESS. THIS COVENANT SHALL RUN WITH THE LEASE. LESSOR ACKNOWLEDGES THAT IN THE VENT OF ANY BREACH HEREOF LESSEE'S REMEDIES AT LAW WOULD BE INADEQUATE AND THEREFORE, AND IN THE EVENT, LESSEE SHALL BE ENTITLED TO CANCEL THIS LEASE OR TO RELIEF BY INJUNCTION, OR OTHERWISE, AS LESSEE MAY ELECT IN ITS SOLE DISCRETION. LESSEE'S REMEDIES, IN ANY EVENT, SHALL BE CUMULATIVE RATHER THAN EXCLUSIVE.

3. **CITI TRENDS** - LANDLORD AGREES NOT TO LEASE OR SUBLEASE ANY SPACE IN THE SHOPPING CENTER AFTER FEBRUARY 3, 2005 TO ANY TENANT WHOSE BUSINESS IS THE OPERATION OF A DISCOUNT CLOTHING STORE OR ANY BUSINESS SIMILAR TO OR IN SUBSTANTIAL COMPETITION WITH THE BUSINESS OF TENANT. BUSINESS SIMILAR TO THAT OF TENANT SHALL BE INTERPRETED TO INCLUDE DISCOUNT CLOTHING STORES OR OFF-PRICE CLOTHING STORES, INCLUDING BUT NOT LIMITED TO ONE-PRICE, ITS FASHION, SIMPLY FASHION, FASHION CENTS, DOTS, CATO, FASHION BUG, AF WRIGHT AND ANY AFFILIATES OF THESE STORES. BUSINESS IS SUBSTANTIAL COMPETITION WITH TENANT SHALL BE INTERPRETED TO INCLUDE BUT NOT BE LIMITED TO ALL THOSE WHICH DEVOTE THIRTY PERCENT (30%) OR MORE OF THEIR SALES TO ITEMS OF MERCHANDISE WHICH ARE IDENTICAL TO, OR SUBSTANTIALLY THE SAME

FROM :Malachite Group of.Texas.Inc    FAX NO. :4099622428    Oct. 16 2006 03:07PM P4

AS, OR WHICH, FOR PRACTICAL PURPOSES, PERFORM THE SAME FUNCTION AS THOSE OFFERED FOR SALE BY TENANT. IN THE EVENT LANDLORD FAILS TO COMPLY WITH THE "EXCLUSIVE USE" CLAUSE, TENANT MAY EITHER A)PAY ONLY 4% OF GROSS SALES AS RENT IN LIEU OF THE AMOUNTS SET FORTH IN PROVISIONS 3 AND 4 HEREINABOVE UNTIL LANDLORD CURES SUCH VIOLATION; OR B) TENANT MAY, AT TENANT'S OPTION, TERMINATE THIS LEASE UPON PROVIDING LANDLORD THIRTY (30) DAYS PRIOR WRITTEN NOTICE.

ANCHOR CLAUSE: IN THE EVENT THAT DOLLAR GENERAL ("ANCHOR TENANT") CEASES TO OPERATE IN THE SHOPPING CENTER, AND COMMENCING UPON THE DATE THAT THE ANCHOR TENANT CEASES TO OPERATE, TENANT SHALL HAVE THE RIGHT TO PAY, IN LIEU OF THE ANNUAL RENTAL RATE AND PERCENTAGE RENTAL, AN AMOUNT EQUAL TO FOUR PERCENT (4%) OF GROSS MONTHLY SALES ("REDUCED RENT") FOR A PERIOD OF ONE YEAR. IF LANDLORD DOES NOT REPLACE THE ANCHOR TENANT WITHIN ONE YEAR WITH A SIMILAR USE TENANT COMPRISING SUBSTANTIALLY THE SAME SQUARE FOOTAGE AND WHICH SHALL BE OPERATING, TENANT SHALL HAVE THE RIGHT TO A) CONTINUE PAYING THE REDUCED RENT, OR B) TERMINATE THIS LEASE. THE REDUCED RENT SHALL BE PAID TO LANDLORD WITHIN TWENTY (20) DAYS OF THE END OF THE PRECEDING MONTH, AND ANY PERCENTAGE RENTAL AMOUNT PAID IN LIEU OF THE BASE RENT RATE SHALL NOT EXCEED THE BASE RENT RATE.

4.    RAMIREZ IMPORTS - NO EXCLUSIONS, CLAUSES, OR RESTRICTIONS.

5.    TEXAS STATE OPTICAL - NO EXCLUSIONS, CLAUSES, OR RESTRICTIONS.

6.    NAOMI FASHIONS - NO EXCLUSIONS, CLAUSES OR RESTRICTIONS.

7.    MOON PALACE - NO EXCLUSIONS, CLAUSES, OR RESTRICTIONS.

8.    SAV-ON OFFICE SUPPLIES -NO EXCLUSIONS, CLAUSES, OR RESTRICTIONS.

9.    ONE STOP BEAUTY - NO EXCLUSIONS, CLAUSES, OR RESTRICTIONS.

10.    BEAUTY SALON - NO EXCLUSIONS, CLAUSES OR RESTRICTIONS.

11.   **SARAH'S BAKERY** – NO EXCLUSIONS, CLAUSES OR RESTRICTIONS.

12.   **RAINBOW APPAREL** – LANDLORD AGREES NOT TO LEASE SPACE AFTER NOVEMBER 2, 1993 IN THIS CENTER TO ANY TENANT USING THE "ONE PRICE CONCEPT" OR THE "CEILING PRICE CONCEPT" FOR THE SALE OF LADIES CLOTHING DURING THE TERM OF THIS LEASE AND ANY EXTENSIONS THEREOF. LANDLORD ALSO AGREES NOT TO PERMIT ANY EXISTING TENANT IN THIS CENTER AS OF NOVEMBER 2, 1993 TO CHANGE ITS BUSINESS TO THE "ONE PRICE CONCEPT" OR THE "CEILING PRICE CONCEPT" FOR THE SALE OF LADIES CLOTHING DURING THE TERM OF THIS LEASE OR ANY EXTENSIONS THEREOF. IN THE EVENT THAT THE LANDLORD ALLOWS A "ONE PRICE CONCEPT" OR "CEILING PRICE CONCEPT" TO OPEN FOR BUSINESS DURING THE LEASE TERM OR ANY EXTENSION THEREOF, TENANT SHALL HAVE THE OPTION TO (I) PAY ONE HALF OF THE FIXED MINIMUM RENT OR (II) TERMINATE THE LEASE.

13.   **SUN LOAN COMPANY** – NO EXCLUSIONS, CLAUSES, OR RESTRICTIONS.

14.   **SIDE POCKET** – NO EXCLUSIONS, CLAUSES, OR RESTRICTIONS.

15.   **AFFORDABLE FURNITURE** – NO EXCLUSIONS, CLAUSES, OR RESTRICTIONS.

16.   **COLORS FOR MEN** – NO EXCLUSIONS, CLAUSES OR RESTRICTIONS.

17.   **DOLLAR SUPREME** – NO EXCLUSIONS, CLAUSES, OR RESTRICTIONS.

18.   **BIOMAT USA, INC.** – LESSOR AGREES TO REFRAIN FROM LEASING TO A LIQUOR STORE OR ANY ESTABLISHMENT WHICH WILL EXCLUSIVELY SALE LIQUOR WITHIN 100 FEET ON EACH SIDE OF LEASED PROPERTY.

19.   **BURKE'S OUTLET** – NON-PERMISSIBLE USE: IF A GOVERNMENTAL AUTHORITY PROHIBITS, FOR MORE THAN SIXTY (60) DAYS, THE USE OF THE DEMISED PREMISES AS A RETAIL STORE FOR REASONS BEYOND THE TENANT'S REASONABLE CONTROL, THEN TENANT SHALL HAVE THE RIGHT TO TERMINATE THIS LEASE AS OF THE DATE OF SUCH PROHIBITION, BY WRITTEN NOTICE TO THE LANDLORD. EXCEPT FOR EXISTING LEASES, LANDLORD AGREES THAT UNLESS TENANT CONSENTS IN WRITING, NONE OF THE PROPERTY SHALL BE OCCUPIED BY ANY ENTERTAINMENT

FROM :Malachite Group of Texas,Inc   FAX NO. :4099622428   Oct. 16 2006 03:08PM P6

FACILITY, RECREATIONAL FACILITY, NON-RETAIL FACILITY, OR
HAZARDOUS OR UNDESIRABLE FACILITY. A.)AS USED HEREIN,
"ENTERTAINMENT FACILITY" OR "RECREATIONAL FACILITY" INCLUDES
BUT IS NOT LIMITED TO, MASSAGE PARLOR, MOVIE THEATER, A BAR
(EXCEPT AS AN INCIDENT TO A FULL KITCHEN RESTAURANT OPERATION
WITH LIQUOR SALES NOT EXCEEDING TWENTY PERCENT (20%) OF SALES), A
TAVERN, AND AMUSEMENT ARCADE, BILLIARDS ROOM, POOL HALL,
BOWLING ALLEY, LIVE ENTERTAINMENT FACILITY, STAGE PRODUCTION(S),
VIDEO GAME ROOM, SKATING RINK, BINGO PARLOR, OR OTHER PLACE OF
PUBLIC AMUSEMENT. NOTWITHSTANDING THE FOREGOING, THE
FOLLOWING USES SHALL BE PERMITTED PROVIDED THEY ARE LOCATED
MORE THAN ONE HUNDRED FEET (100') AWAY FROM THE DEMISED
PREMISES: MOVIE THEATER, AN AMUSEMENT ARCADE OR A RESTAURANT
OPERATION WHICH PROVIDES AMUSEMENTS (SUCH AS CHUCK-E-CHEESE),
BILLIARDS ROOM, BOWLING ALLEY, VIDEO GAME ROOM, SKATING RINK.
B.) AS USED HEREIN, "NON-RETAIL FACILITY" INCLUDES, BUT IN NOT
LIMITED TO, PROFESSIONAL SPACE AND OFFICES (EXCEPT AS IS
INCIDENTAL TO A RETAIL OPERATION), WAREHOUSING OPERATIONS,
OFFICES, MEETING HALLS, AN OFFICE BUILDING OR PLACE FOR OFFICE
USAGE OF ANY NATURE, AND A MEETING HALL OR PLACE FOR PRIVATE
CLUBS OR ORGANIZATIONS. HOWEVER, UP TO 30,000 SQUARE FEET MAY BE
USED FOR RETAIL ORIENTED OFFICE SPACE COMMONLY PERMITTED IN
SHOPPING CENTERS SUCH AS REALTOR, DENTAL, MEDICAL, TRAVEL
AGENCY, AND BANKS. C.) AS USED HEREIN, "HAZARDOUS OR UNDESIRABLE
FACILITY" INCLUDES BUT IN NOT LIMITED TO, GAS STATIONS (EXCEPT
EXISTING LOCATED UPON OUTPARCELS ONLY), MOTORCYCLE SERVICE
SHOPS (THIS PROHIBITION SHALL NOT APPLY TO A SALES ONLY
OPERATION), GUN SHOPS, PAWN SHOPS, FLEA MARKETS, MASSAGE
PARLORS, ADULT BOOK OR ADULT VIDEO STORES, OR OTHER BUSINESSES
WHICH SELL OR DISPLAY PORNOGRAPHIC MATERIAL OR OPERATES
BUSINESSES THAT ARE UNSUITABLE FOR CHILDREN TO VISIT AND
PATRONIZE, INDUSTRIAL OR MANUFACTURING USES, AUTOMOBILE, BOAT
OR TRAILER SALES, OR ANY USE WHERE INVENTORY IS STORED OR
DISPLAYED IN THE PARKING AREAS OF THE SHOPPING CENTER. IT IS
AGREED BETWEEN THE PARTIES THAT PARKING AREAS AND OTHER
COMMON FACILITIES SHOULD NOTE BE BURDENED BY EITHER LARGE
SCALE OR PROTRACTED USE WHICH IS OFTEN ASSOCIATED WITH MANY OF
THE ABOVE PROHIBITED USES. LANDLORD FURTHER AGREES THAT, IN THE
EVENT OF A VIOLATION OF THE PROHIBITED USES FOR A PERIOD OF SIXTY
(60) DAYS AFTER NOTICE FROM TENANT TO LANDLORD, TENANT'S RENT
DUE UNDER PARAGRAPH 3 OF THIS LEASE (BOTH GROSS ANNUAL RENT
AND PERCENTAGE RENT) SHALL BE REDUCED TO THREE PERCENT (3%) OF
GROSS RECEIPTS UNTIL SUCH TIME AS SUCH NONCOMPLIANCE IS CURED.
THE AMOUNT OF REDUCTION IN PERCENTAGE RENT SHALL BE BASED
UPON THE PROPORTION THAT THE NUMBER OF DAYS THE

NONCOMPLIANCE EXISTS BEARS TO THE TOTAL NUMBER OF DAYS IN THE LEASE YEAR.

20.   LA MORENITA MEAT MARKET - NO EXCLUSIONS, CLAUSES OR RESTRICTIONS

21.   RADIO SHACK - LESSOR COVENANTS THAT DURING THE LEASE TERM, NO SPACE WITHIN THE SHOPPING CENTER, OTHER THAN THE PREMISES, OR ANY ADJACENT PROPERTY OWNED BY LESSOR, SHALL BE USED FOR (I.) THE RETAIL SALE OR DISPLAY OF ELECTRONIC EQUIPMENT AND COMPONENTS, INCLUDING, BUT NOT LIMITED TO, ALL TYPES OF TELECOMMUNICATION AND TRANSMITTING EQUIPMENT, COMPUTERS AND RELATED ACCESSORIES, AND AUDIO/VIDEO EQUIPMENT AND ACCESSORIES; OR (II) THE CONNECTION, INSTALLATION, SALE, DISPLAY OR PROMOTION OF OFF-PREMISES (INTERNET, ON-LINE, BROADBAND, NARROWBAND, DSL, CALBE MODEM, SATELLITE.) ACCESS SERVICES, ACCESS DEVICES OR RELATED TOOLS, SERVICES, EQUIPMENT, OR ACCESSORIES WHICH ENABLE OR UTILIZE CONNECTION TO WHAT IS COMMONLY KNOWN TODAY AS THE "INTERNET" OR ANY ENHANCEMENT THEREOF OR SUCCESSOR THERETO (THE "PROTECTED MERCHANDISE").

IF LESSOR FAILS TO COMPLY WITH THE PROVISIONS OF THIS SECTION WITHIN 30 DAYS AFTER LESSOR'S RECEIPT OF NOTICE OF THE VIOLATION, LESSEE MAY: (I) PAY 3% OF GROSS SALES MONTHLY, IN ARREARS WITHIN 20 DAYS AFTER THE END OF EACH CALENDAR MONTH, IN LIEU OF FIXED MINIMUM RENT AND ALL ADDITIONAL CHARGES UNDER THE LEASE UNTIL THE VIOLATION IS CURED: (II) TERMINATE THE LEASE; AND/OR (III) PURSUE ANY AND ALL LEGAL OR EQUITABLE REMEDIES AVAILABLE TO LESSEE. IF LESSEE ELECTS TO PAY A PERCENTAGE OF GROSS SALES IN LIEU OF FIXED MINIMUM RENT AND ADDITIONAL CHARGES AS PROVIDED ABOVE, LESSEE SHALL RETAIN THE RIGHT TO TERMINATE THIS LEASE.

THE PROVISIONS OF THIS SECTION SHALL NOT APPLY TO STORES OVER 10,000 SQUARE FEET OR (I) THE RETAIL SALE OR DISPLAY OF TELEVISION, VCR'S, OFFICE EQUIPMENT OR RELATED EQUIPMENT AND ACCESSORIES, PROVIDED SUCH MERCHANDISE IS DISPLAYED IN NOT MORE THAN 100 SQUARE FEET OF DISPLAY AREA; OR (II) ANY EXISTING TENANT OR RENEWAL OF EXISTING TENANT WHICH IS PERMITTED TO SELL AND DISPLAY THE PROTECTED MERCHANDISE AS OF THE DATE OF THIS AGREEMENT.

22.   EZ PAWN - LESSOR COVENANTS THAT DURING THE PRIMARY TERM OF THIS LEASE AND ANY RENEWALS THEREOF, THAT IT WILL NOT LEASE OR CONSENT TO THE SUBLEASE OF THE LEASE PREMISES (OR ANY OTHER

FROM :Malachite Group of Texas, Inc    FAX NO. :4099622428    Oct. 16 2006 03:10PM P8

PART OF THE LAND ON WHICH THE LEASE PREMISES IS LOCATED, OR ANY
OTHER SPACE WITHIN THE SAME OR ANY ADJACENT BUILDING OR
SHOPPING CENTER) TO ANOTHER PAWN SHOP.

23.    TEXAS STATE BANK - NO EXCLUSIONS, CLAUSES, OR RESTRICTIONS.

24.    BURGER KING - NO EXCLUSIONS, CLAUSES, OR RESTRICTIONS.

25.    PARADISE CAFÉ - NO EXCLUSIONS, CLAUSES OR RESTRICTIONS.

26.    ICE CREAM STORE - NO EXCLUSIONS, CLAUSES, OR RESTRICTIONS.

## EXHIBIT F

**LESSEE'S SIGN CRITERIA**



**meat produce dairy frozen**

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| | 1'-6" | 1'-0" | 5'-0 3/8" | 7'-10" | 5'-4 1/2" | 6'-4 3/4" |
| | 2'-0" | 1'-4" | 6'-8 1/2" | 10'-5" | 7'-2" | 8'-6" |

**SIGN NOTES:**
NON ILLUMINATED FORMED LETTERS

**LETTER DEPTH:**
2 1/2" DEEP

**LETTER CONSTRUCTION:**
THERMAL FORMED FROM 3/16" SOLAR GRADE ACRYLSTEEL.
EDGES TO BE CUT AND GROUND SMOOTH

**MOUNTING TYPE:**
MOUNTING STUD PADS TO BE WELDED TO SECOND SURFACE WITH
A MINIMUM OF (4) FOUR STUDS PER LETTER

**FINISH:**
LETTERS TO BE PAINTED TO MATCH PMS #286c BLUE.

---

**VARIOUS**

*southwest signs*
*the difference is your identity.*

210-648-3221 • www.southwestsigns.com • 800-927-3221
7205 So. W.White Rd., San Antonio, Texas 78220

THIS IS AN ORIGINAL UNPUBLISHED
DRAWING CREATED BY SWS SIGNS.
IT IS SUBMITTED FOR YOUR
PERSONAL USE IN CONJUNCTION
WITH A PROJECT BEING PLANNED
FOR YOU BY SWS SIGNS. IT IS NOT
TO BE SHOWN TO ANYONE OUTSIDE
YOUR ORGANIZATION, NOR IS IT TO
BE USED, REPRODUCED, COPIED OR
EXHIBITED IN ANY FASHION.

**SAVE A LOT**

| CUSTOMER APPROVAL | | |
|---|---|---|
| Revision: 7-21-03 | | Date: 7-29-03 |
| Drawn By: E. Leos | | Sales Rep: Guy C. |
| Scale: - | | Dwg. No: 00000-004 |

---

| General | Faces | Structure | Electrical |
|---|---|---|---|
| MANUFACTURE AND INSTALL OR REFACE: | TYPE OF FACES: | (DWS) SIGN: | LAMPS: |
| | | FRAME: | EST. KICW: |
| CABINET SIZE & COLOR: | COLORS: | FILLER: | EST. AMPS: |
| SQUARE FOOTAGE: | | RADIUS: | BALLAST: |
| RETAINER SIZE: | SHOWN | POLE COLOR & SIZE: | VOLTAGE: |
| DEPTH SIZE CABINET: | | HOLE SIZE: | |

**EXHIBIT G**

**ESTOPPEL CERTIFICATE**

*Jefferson City Shopping Center*
*3513 Twin City Highway*
*Port Arthur, TX*

DATED:

TO:

RE:   Lease Agreement, for property located at                              , Port Arthur,
      TX,  (the "Lease") Store #_____

Ladies and Gentlemen:

The undersigned certifies to you, to the best of the undersigned's knowledge, as follows:

1.   The Lease is in full force and effect and has not been amended except as set forth in
     Exhibit 1.

2.   Rent payment of _____/mo ($_____ base rent plus _____% sales tax) has
     been paid through _____, 20___.

3.   The undersigned has not given or received a notice complying with the notice provisions
     in the Lease relating to a default that has not yet been cured.

4.   The Commencement Date of the Lease was _____, 20___. The expiration
     date of the present term of the Lease, excluding unexercised renewals, is
     _____, 20___.

**MORAN FOODS, INC. d/b/a Save-A-Lot, Ltd.**

By:

Name:            G.F. Meyer

Its:             Vice President

**EXHIBIT 1**

1.    Revised Commencement Letter dated _____, 20____.

# EXHIBIT B



STEPHEN P. LODEWYCK
ASSOCIATE REAL ESTATE DEVELOPMENT COUNSEL
DIRECT DIAL: 314.592.9639
FAX: 314.592.9866
E-Mail: stephen.lodewyck@save-a-lot.com

MORAN FOODS, INC. D/B/A SAVE-A-LOT, LTD.
A SUPERVALU COMPANY

January 10, 2008

Jefferson City Commons, LLC
Attention:  Mr. Manouchehr Malekan
48 East Old Country, #203
Mineola, NY  11501

**SENT VIA CERTIFIED MAIL**
RETURN RECEIPT REQUESTED

> Re:    Save-A-Lot Store #713
>        *3513 Twin City Highway, Suite 22*
>        *Port Arthur, Texas*

## NOTICE OF TERMINATION

Dear Mr. Malekan:

Reference is made to that certain Lease dated July 10, 2007 ("Lease") by and between Moran Foods, Inc., as Lessee (*"SAL"*), and Jefferson City Commons, LLC, as Lessor (*"JCC"*), relating to certain premises situated in the Jefferson City Shopping Center at 3513 Twin City Highway in Port Arthur, Texas.

Section 4.3 of the Lease provides:

> "Notwithstanding any delays, whether within or beyond the control of Lessor, if the LP Work has not been completed...and actual exclusive possession of the Leased Premises tendered to Lessee on or before the date six (6) months from the date hereof, Lessee may cancel this Lease by notice in writing to Lessor given at any time thereafter prior to such completion and tender."

JCC has failed to complete the LP Work and tender actual exclusive possession of the Leased Premises to Lessee on or before the date six (6) months from the date of the Lease (January 10, 2008). Therefore, this correspondence shall serve as written notice that Lessee has terminated the Lease pursuant to the aforementioned language in Section 4.3 effective as of January 10, 2008.

Jefferson City Commons, LLC
Attention: Mr. Manouchehr Malekan
January 10, 2008
Page 2

Copies of this notice have been sent to your attorney, Mr. David Jaroslawicz of Jaroslawicz &
Jaros, LLC, via fax and First Class US Mail. We request that all future communications by or on
behalf of JCC be directed to the undersigned.

Very truly yours,

MORAN FOODS, INC.

Stephen P. Lodewyck,
Associate Real Estate Development Counsel

Cc:     Addressee via facsimile at (516) 877-1680

        Mr. David Jaroslawicz, Esq.
        via First Class US Mail and facsimile at (212) 227-5090

        Mr. Rick F. Meyer

## CERTIFICATE OF SERVICE

I, David B. Picker, a member of the Bar of this Court, hereby certify that I caused a true and correct copy of the foregoing Notice of Motion to Dismiss Intervene, supporting Affirmation, and Memorandum of Law in Support of Motion to Dismiss to be served by first class U.S. mail, postage prepaid, this 6th day of **June**, 2008, upon the following:

> David Jaroslavicz, Esquire
> Jaroslawicz & Jaros, LLC
> 225 Broadway – 24th Floor
> New York, NY 10007

Notice was also provided by electronic filing on the Court's ECF electronic filing system.

Date:   June 6, 2008
        Philadelphia, PA

_____
David B. Picker

475596-1