UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JEFFERSON CITY COMMONS, LLC,

                Plaintiff,

      -against-                                                      08 Civ. 4866 (LAK)

MORAN FOODS, INC., d/b/a SAVE-A-LOT, LTD.,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

                Robert J. Tolchin
                Elizabeth Eilender
                Michelle Holman
                LAW OFFICES OF ROBERT J. TOLCHIN
                *Attorneys for Plaintiff*

                David B. Picker
                Suzanne Ilene Schiller
                SPECTOR GADON & ROSEN, P.C.
                *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff Jefferson City Commons, LLC ("JCC"), the owner of a shopping center, brings this action for damages against Moran Foods, Inc. ("Moran"), the lessee of space in the shopping center, for breach of the lease. The action was removed to this Court on the basis of diversity of citizenship. Moran now moves for partial summary judgment determining that any recovery by JCC is limited to base rent, additional rent, and any charges and attorneys' fees as provided in the lease and

2

that JCC may not recover, among other things, any rent and expenses lost from other tenants or any diminution of the value of the shopping center.

*Facts*

*The Lease*

JCC owns the Jefferson City Shopping Center in Port Arthur, Texas. Moran operates a chain of grocery stores. The parties entered into a lease, dated July 17, 2007, pursuant to which JCC agreed to rent and Moran rented, premises at the shopping center for an original term of seven years and with several options to Moran to extend the term.

Under Section 2.1 of the lease, the term and Moran's obligation to pay base rent and additional rent was to "begin on the earlier of (i) the day [Moran] opens for business with the public in the Leased Premises, or (ii) the one hundred twentieth (120th) day following acceptance by [Moran] of possession of the Leased Premises as provided for in Article 4 hereof . . ." Section 4.3 in turn obligated Moran to accept possession upon JCC's completion of certain improvements to the leased premises.

The other relevant provision of the lease is Section 6.2, which is captioned "Use of Common Facilities." After setting forth various obligations of JCC in that regard, it contains a separate paragraph that, in solid capital letters, provides:

> "NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, LESSEE [MORAN] SHALL NOT HAVE ANY OBLIGATION, EXPRESS OR IMPLIED, TO OPEN ANY BUSINESS AT THE LEASED PREMISES, TO REMAIN OPEN FOR BUSINESS IN THE EVENT A BUSINESS IS OPENED AT THE LEASED PREMISES, TO REOPEN FOR BUSINESS IN THE EVENT A BUSINESS IS OPENED AT THE LEASED PREMISES AND THEN CLOSES, OR OTHERWISE TO CONDUCT ANY BUSINESS AT THE LEASED PREMISES."

*Subsequent Events*

The amended complaint alleges and, for purposes of this motion only, Moran concedes that JCC began preparing the leased premises for Moran's occupancy. Moran, for its part, began working on detailed plans and specifications for the required construction, but never completed or furnished them to JCC, which in consequence was prevented from completing the build-out. In time, Moran purported to terminate the lease. JCC then brought this action, claiming that Moran's failure to provide the plans and specifications constituted a breach of its obligations under the lease. The amended complaint seeks to recover base rent, additional rent and other charges as provided in the lease. As time went by, however, JCC expanded its demands to include a claim for damages allegedly suffered as a result of the loss of "rents from other tenants who left the shopping center because the [Moran] supermarket failed to open" and a diminution of "value of the shopping center due to the lack of an anchor tenant."[1]

*Discussion*

As JCC's memorandum makes abundantly clear, the lynchpin of the expanded damage claim is the premise that Moran breached the lease "because the supermarket failed to open." Section 6.2, however, is the conclusive answer to this claim. It explicitly and unambiguously provides that Moran had no obligation to open any business at the leased premises. Try as it might, JCC cannot avoid this simple fact.

It relies first on the affidavit of its principal, who asserts that the relevant portion of Section 6.2:

"is specifically for the situation when a supermarket or similar tenant *after* they open

---

[1] Pl. Mem. 3.

>for business and for a period of time, if the store does not become profitable, at that point if the cost of operating the store is more than the income, then it makes economic sense to close the store and continue to pay rent the tenant may do so."[2]

There are at least two independent problems with this argument.

First, the argument is flatly inconsistent with the language of the lease, which states that the tenant has no obligation to open any business at the leased premises. Thus, this provision of the lease quite plainly is not solely for a situation in which a tenant opens for business and later finds the location unprofitable.

Second, to whatever extent JCC's principal may be understood as asserting that he understood the provision to be so limited, the argument likewise would be without merit. A contracting party's uncommunicated subjective intent or understanding is immaterial, at least in the absence of an ambiguous contract term. There is no ambiguity here.[3]

JCC's next argument is that Moran's failure to open a grocery store in the leased premises breached the duty of good faith and fair dealing implied in the lease. Section 6.2 of the lease, however, is a complete answer to this argument as well. A party to a contract breaches the implied covenant of good faith and fair dealing when it "acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement."[4] But the implied covenant is not breached where a party merely exercises rights afforded to it under the agreement.[5] In other words, the covenant does not imply obligations

---

[2] Malekan Aff. ¶ 7 (emphasis in original) (*sic*).

[3] *See, e.g., Property Asset Mgmt., Inc. v. Chicago Title Ins. Co.,* 173 F.3d 84, 87 (2d Cir. 1999).

[4] *Jaffe v. Paramount Communs.Inc.,* 222 A.D.2d 17, 22-23, 644 N.Y.S.2d 43, 47 (1st Dept. 1996).

[5] *See id.* 222 A.D.2d at 22-23, 644 N.Y.S.2d at 47.

5

"'inconsistent with other terms of the contractual relationship.'"[6]

Finally, JCC argues that there is an issue of fact as to whether Moran would have opened the store had it furnished the requisite plans and specifications. With due respect, I fail to see the materiality of this question. Moran had the right under the lease to decide not to open a store in the leased premises regardless of whether it furnished plans and specifications.

*Conclusion*

For the foregoing reasons, defendant's motion for partial summary judgment [docket item 24] is granted in all respects. Plaintiff, should it establish liability, therefore may not recover any damages in this action except base rent, additional rent, and any charges and attorneys' fees as provided in the lease. This ruling moots defendant's motions *in limine* with respect to plaintiff's proposed expert witness and the preclusion of other evidence [docket items 34, 36]. So the Clerk shall terminate those motions as well.

SO ORDERED.

Dated:     May 21, 2009

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[6] *511 West 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 135 (2002) (quoting *(Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 304, 461 N.Y.S.2d 232, 237 (1983)).